1  MARK B. MIZRAHI (State Bar No. 179384)
     mmizrahi@wrslawyers.com
2  ERIC LEVINRAD (State Bar No. 169025)
     elevinrad@wrslawyers.com
3  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 West Olympic Boulevard, 9th Floor
4  Los Angeles, California 90064-1582
   Telephone:  (310) 478-4100
5  Facsimile:   (310) 479-1422

6  Attorneys for Plaintiffs
   E.L.V.H., Inc. and Edward Van Halen

7

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | E.L.V.H., Inc., a California corporation; | Case No. 2:18-cv-00710-ODW-PLA
   | and Edward Van Halen, an individual,
12 |                                           | **PLAINTIFFS' *EX PARTE*
   |             Plaintiffs,                   | APPLICATION FOR ORDER
13 |                                           | AUTHORIZING ELECTRONIC
   |        vs.                                | SERVICE OR, ALTERNATIVELY,
14 |                                           | SERVICE BY PUBLICATION;
   | Andrew Bennett, an individual,            | MEMORANDUM OF POINTS AND
15 |                                           | AUTHORITIES; DECLARATIONS
   |             Defendant.                    | OF ADAM D. MANDELL, ESQ.,
16 |                                           | NICHOLAI GRANADOS, JOHN
   |                                           | NARCISE, AND JASON
17 |                                           | GRANDSINGER IN SUPPORT
   |                                           | THEREOF**
18 |
19 |                                           | Trial Date:     None
20

21

22

23

24

25

26

27

28

1    Pursuant to Civil Local Rule 7-19, Plaintiffs E.L.V.H., Inc. and Edward Van
2  Halen ("Plaintiffs") hereby respectfully apply to the Court *ex parte* for an order
3  authorizing electronic service (e.g., via email and/or Facebook Messenger) or,
4  alternatively, service by publication, on Defendant Andrew Bennett ("Bennett").
5    Service on Bennett includes the following:
6    1.    The Summons, Complaint, and other case initiating papers in this
7  matter (collectively, the "Summons/Complaint");
8    2.    Plaintiffs' *ex parte* application for: (1) Temporary Restraining Order;
9  and (2) Order to Show Cause Why a Preliminary Injunction and Impoundment
10  Order Should Not Issue and supporting papers (collectively, the "TRO Papers"); and
11    3.    Plaintiffs' *ex parte* application for leave to file under seal in connection
12  with the TRO Papers (the "Application to File Under Seal").
13    Good cause exists for this *ex parte* application and extraordinary relief is
14  warranted on the grounds that Plaintiffs have made reasonably diligent efforts to
15  serve Bennett with process.  However, despite Plaintiffs' efforts, service on Bennett
16  through conventional means is impracticable.  Meanwhile, Bennett continues
17  unabated with the unauthorized distribution of video footage using Mr. Van Halen's
18  name, voice, photograph and/or likeness and disclosing Plaintiffs' confidential
19  information, among other things, which are all copyright infringements and breaches
20  of the terms of the parties' express, written agreements.  Such actions are causing
21  irreparable harm to Plaintiffs' hard earned goodwill and reputation.
22    Plaintiffs do not believe that Bennett has retained counsel to represent him in
23  this action.  Plaintiffs are sending via email (at an email address that he has been
24  actively using to communicate with Plaintiffs even after the filing of the instant
25  lawsuit) a copy of the instant application, the Memorandum of Points and
26  Authorities and supporting declarations and exhibits thereto; and Proposed Order.
27  Plaintiffs will also be sending Bennett a cover letter informing him of the Court's *ex*
28  *parte* application procedures.

1        This application is based on the authorities cited in the accompanying

2   Memorandum of Points and Authorities; the supporting declarations and all exhibits

3   thereto; all other papers and pleadings on file; and such additional arguments and

4   evidence as may be presented to the Court at or before a hearing on this application.

5

6   DATED: April 20, 2018         WOLF, RIFKIN, SHAPIRO,

7                                SCHULMAN & RABKIN, LLP

8

9                           By:       /s/ Mark B. Mizrahi

10                              MARK B. MIZRAHI

11                          Attorneys for Plaintiffs E.L.V.H., Inc. and

12                          Edward Van Halen

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND FACTS ..................................................................... 1

    A.    Efforts to Serve Defendant Andrew Bennett in New York .................. 2

    B.    Efforts to Serve Defendant Andrew Bennett in California................... 2

    C.    Efforts by Private Investigator ................................................. 3

    D.    Additional Efforts by Counsel ................................................. 4

III.  ARGUMENT ....................................................................................... 5

    A.    Federal Rules of Civil Procedure Rule 4(e) Permits Service of Bennett Under New York Law or California Law. ............................ 5

    B.    The Court Should Grant This *Ex Parte* Application And Permit Alternative Service On Bennett Pursuant to New York Law. ............... 6

        1.    New York Case Law Accepts Service Via E-Mail ..................... 8

        2.    New York Law Permits Service of Process Via Facebook ........ 10

    C.    Alternatively, Plaintiffs Request an Order to Permit Service on Bennett by Publication Pursuant to California Law. .......................... 11

        1.    Bennett Cannot Be Served Despite Reasonable Diligence by Plaintiffs ................................................................. 12

        2.    Cause of Action Exists Against Bennett and He Is A Necessary Party ........................................................... 13

IV.   CONCLUSION .................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

## STATE CASES

*Baidoo v. Blood-Dzraku*, 48 Misc.3d 309 (N.Y. Sup. Ct. 2015)................................10

*Coyne v. Coyne*, 83 A.D.2d 774 (N.Y. App. 1981).......................................................7

*Dobkin v. Chapman*, 21 N.Y.2d 490 (N.Y. 1968)....................................................7, 8

*Franklin v. Winard*, 189 A.D.2d 717 (N.Y. App. 1993) .............................................7

*Liebeskind v. Liebeskind*, 86 A.D.2d 207 (N.Y. App. 1982) ......................................7

*Saulo v. Noumi*, 119 A.D.2d 657 (N.Y. App. 1986) ...................................................7

*Snyder v. Energy, Inc.*, 19 Misc.3d 954 (N.Y. Civ. Ct. 2008) ................................8, 9

*Van Dunk v. Lazrovitch*, 50 Misc.2d 649 (N.Y. Civ. Ct. 1966).................................8

*Watts v. Crawford*, 10 Cal.4th 743 (Cal. 1995).........................................................13


## FEDERAL STATUTES

Fed. R. Civ. P. Rule 4(e)................................................................................................5


## STATE STATUTES

Cal. Civ. Proc. § 415.10...............................................................................................12

Cal. Civ. Proc. § 415.20(a) ..........................................................................................12

Cal. Civ. Proc. § 415.20(b) ..........................................................................................12

Cal. Civ. Proc. § 415.40..........................................................................................13, 14

Cal. Civ. Proc. § 415.50(a) ..........................................................................................13

Cal. Civ. Proc. § 415.50(b) ..........................................................................................13

Cal. Gov't. Code § 6064..........................................................................................13, 14

N.Y. C.P.L.R. § 308(1).............................................................................................6, 9

N.Y. C.P.L.R. § 308(2).............................................................................................6, 9

N.Y. C.P.L.R. § 308(4).............................................................................................7, 9

N.Y. C.P.L.R. § 308(5) ................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Despite persistent efforts, Plaintiffs E.L.V.H., Inc. and Edward Van Halen ("Plaintiffs") have been heretofore unable to serve process on sole Defendant Andrew Bennett ("Bennett").  Plaintiffs bring this application to permit service of Bennett by alternative means.  Bennett is directly implicated in the Complaint for, among other things, the intentional infringement of E.L.V.H., Inc.'s copyrights, cybersquatting, violation of California statues and common law for misappropriation of Plaintiffs' rights of publicity, and breach of contract.  As the diligent efforts of Plaintiffs to serve Bennett using conventional methods have been thus far unsuccessful, this Court should permit service on Bennett using alternative means – including via email at an address Defendant has repeatedly used to communicate directly with Plaintiffs' representatives even after the filing of this lawsuit and/or via Facebook Messenger through Defendant's Facebook account which he has been seen to regularly check.

### II.   BACKGROUND FACTS

Bennett is now offering to sell an edited version of video footage, the copyright in which is owned by E.L.V.H., Inc., under the title The 5150 Vault, for his own personal gain and at Plaintiffs' expense, in violation of federal and state law.

Plaintiffs filed their Complaint on January 26, 2018, against Bennett and alleging causes of action for: (1) copyright infringement; (2) violation of the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d); (3) violation of Cal. Civ. Code § 3344; (4) misappropriation of common law right of publicity; and (5) breach of contract.  See Docket ("Dkt.") No. 1; Declaration of Adam D. Mandell, Esq. ("Decl. Mandell"), ¶¶3-4.

As more fully detailed below, since the filing of the Complaint, Plaintiffs' counsel has made extensive and reasonably diligent efforts to ascertain Bennett's

1  current address so that he could be served with process, including, but not limited to:

2  (1) attempting personal service at Bennett's probable offices/residences in New

3  York City and San Diego; (2) hiring a private investigator; and (3) performing

4  online public records searches, Westlaw database searches, and reviewing Bennett's

5  social media profiles.

6  **A.    Efforts to Serve Defendant Andrew Bennett in New York**

7  Plaintiffs' counsel initially was informed and believed that Bennett resided at

8  and/or maintained offices at a high-rise apartment building located at 61 W. 62nd

9  Street, New York, New York 10023.  Decl. Mandell, ¶5.

10  On February 2, 2018, a process server visited the New York high-rise

11  apartment and attempted to serve Bennett with the Summons, Complaint, and other

12  case initiating papers (collectively, the "Summons/Complaint").  Affidavit of

13  Attempted Service by Nicholai Granados ("Aff. Granados"), ¶3.  However, at that

14  time, the doorman/concierge at the high-rise apartment advised the process server

15  that he had known of an Andrew Bennett who lived in apartment 23C but provided

16  little additional information.  *Id.*

17  On February 26, 2018, the process server again attempted to effectuate

18  service of the Summons/Complaint on Bennett at the New York address.  *Id.* at ¶4.

19  At that time, the process server spoke to another doorman/concierge who had

20  worked at that high-rise apartment building for the past four (4) years.  The

21  doorman/concierge advised the process server that he "knew of" Bennett.  He also

22  indicated that the current resident of apartment 23C was a gentlemen named

23  Matthew Heckerling.  The process server convinced the doorman/concierge to call

24  Matthew, who confirmed to the process server that Bennett has not lived at the

25  apartment "in years" and that Bennett lives "somewhere" in Long Island City

26  (which is located in Queens, New York).  *Id.*

27  **B.    Efforts to Serve Defendant Andrew Bennett in California**

28  In addition to the attempted service of Bennett at the address in New York

3065732.1                                         -2-

City, New York, Plaintiffs also attempted service in California   On or about February 12, 2018, counsel for Plaintiffs obtained a potential residential address for Bennett in San Diego, California.  *See* Declaration of John Narcise ("Decl. Narcise"), ¶¶3-4, Exhibit ("Exh.") 1.  On February 14, 2018, a process server was dispatched to the potential residence, a condominium complex, in San Diego with copies of the Summons, Complaint, and other case initiating papers in order to effectuate service of process on Bennett.  *Id.* at ¶5, Exh. 2.  However, upon arrival at the location, the process server could not find Bennett's name on the listed condominium owner directory.  *Id.*  Moreover, the current occupant at the San Diego address advised that she did not know of Bennett.  *Id.*

### C.    Efforts by Private Investigator

On or about February 16, 2018, plaintiffs' counsel hired First Legal Investigations, a licensed detective agency, to locate Bennett.  *Id.* at ¶6; Declaration of Jason Grandsinger ("Decl. Grandsinger"), ¶2.

First Legal Investigations performed several searches for Bennett within a myriad of public record indexes at their disposal, including, but not limited to, bankruptcy filings, civil judgments, corporate affiliations, civil judgments, DMV information, and Federal and State Tax lien filings.  Decl. Grandsinger, ¶3.  Using these public record indexes, First Legal Investigations ascertained that Bennett resided at 61 W. 62nd Street, Apt. 23C, New York, NY 10023.  *Id.* at ¶4.  Again, this is the same address wherein the New York process server had twice previously failed to effectuate service.

Using the information provided by the New York process server, First Legal Investigations performed searches, using the variety of public record indexes, for possible addresses for Bennett in Long Island City or Queens.  *Id.* at ¶6.  However, First Legal Investigations could identify no such addresses.  *Id.*

First Legal Investigations also submitted requests to both the California and New York Department of Motor Vehicles for information relating to Bennett.  *Id.* at

-3-

¶¶8-9.  First Legal Investigations found that Bennett has a suspended California driver's license and no driver's license in the State of New York.  *Id.*

First Legal Investigations further submitted inquiries to the United States Postal Service for any forwarding addresses for Bennett related to the address in San Diego and the address in New York.  *Id.* at 10-13.  As of the date of this filing, First Legal Investigations has received no results with respect to any forwarding addresses pertaining Bennett at the San Diego address and a negative result with respect to any forwarding addresses pertaining to Bennett a the New York address. *Id.* at ¶¶11, 13.

Lastly, First Legal Investigations had conducted a social media search on Bennett; however, there have been no potential addresses found from the review of same.  *Id.* at ¶14.  Presently, First Legal Investigations does not know of any other source from which to ascertain Bennett's whereabouts.  *Id.* at ¶15.

**D.**   **Additional Efforts by Counsel**

On or about February 12, 2018, Plaintiffs' counsel's office performed an online search for Bennett using Westlaw PeopleMap data sources, which include bankruptcy records, corporate affiliations, deed transfers, historical person locators, liens and judgments, motor vehicle registrations, phone records, tax assessor records and utility locators for Bennett.  These searches lead to the identification of the San Diego addresses and subsequent unsuccessful service thereat.  Decl. Narcise, ¶¶3-5, Exhs. 1, 2.

On February 23, 2018, pursuant to the provisions of California Code of Civil Procedure § 415.40, Plaintiffs' counsel's office sent the Summons/Complaint via first-class certified mail, return-receipt requested to Bennett.  The envelope was addressed to Bennett at 61 W. 62nd Street, Apt. 23C, New York, NY 10023. However, on or about March 17, 2018, Plaintiffs' counsel's office received the same envelope, unopened and marked "Return to Sender; Unable to Forward."  *Id.* at ¶7.

Plaintiffs' counsel's office had conducted review and surveillance of

Bennett's social media, particularly Bennett's Facebook profile, in an effort to locate a residential or business address for Bennett. However, despite all such reasonable efforts and diligence by Plaintiffs, all attempts have thus far been unsuccessful. *Id.* at ¶12.

Lastly, Bennett has corresponded and continues to correspond with Plaintiffs' representatives via <5150vaulted@gmail.com>. Decl. Mandell, ¶6-7. On no less than eight (8) occasions, Plaintiffs' representatives have sent emails to this address requesting Bennett to provide his location so that Plaintiffs can arrange for service. *Id.*

In sum, Plaintiffs' – via their counsel, private investigator, and process servers – have expended considerable time, costs, and resources in order to effectuate service of process on Bennett through conventional means. As such, Plaintiffs implore the Court to now grant them the ability to serve the Summons/Complaint, TRO Papers, and the Application to File Under Seal through electronic means or, alternatively, service by publication.

## III. <u>ARGUMENT</u>

### A. <u>Federal Rules of Civil Procedure Rule 4(e) Permits Service of Bennett Under New York Law or California Law.</u>

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") allows a party to effectuate service by publication. Fed. R. Civ. P. 4(e) provides, in pertinent part:

> Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district in the United States by:
>
> (1) *following state law* for serving a summons in an action brought in courts of general jurisdiction *in the state where the district court is located* or *where service is made*. . . (Emphasis added.)

An extensive search of public records has revealed that Defendant Andrew

Bennett's last known place of residence is in the state of New York. *See* Decl. Grandsinger, ¶4; Decl. Mandell, ¶7.  Moreover, Defendant has confirmed to Plaintiffs' representatives via email that he lives in New York City, New York. Dec. Mandell, ¶7.  Accordingly, the state of New York is the state where service on Bennett would be made.  Meanwhile, the State of California is where the district court is located.

Accordingly, for the reasons set forth below, the Court should grant this *ex parte* application and permit service upon Bennett by electronic mail and/or Facebook messenger, pursuant to New York law (law of the state of service) or, in the alternative, permit service upon Bennett by publication pursuant to California law (law of the state where the district court is located).

**B.     The Court Should Grant This *Ex Parte* Application And Permit Alternative Service On Bennett Pursuant to New York Law.**

New York Civil Practice Law & Rules ("N.Y. C.P.L.R.") §308 (1) – (2), the law of the State of New York wherein Bennett is currently believed to reside, provides that service can be effected on a natural person by:

> 1.  by delivering the summons within the state to the person to be served; or
>
> 2.  by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise. . .

N.Y. C.P.L.R. §308 (4) further provides, in pertinent part, for the "nail and mail" service:

> [W]here service under paragraph one and two cannot be made with due diligence . . . [service may be effected] by affixing the summons to the door . . . of . . . the dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence . . .

Finally, per N.Y. C.P.L.R. §308 (5) provides, in pertinent part:

> if service is impracticable under paragraph one, two, and four of this section [service may be made] in such manner as the court, upon motion without notice, directs.

N.Y. C.P.L.R. §308(5) is employed by the courts in the "unpredictable circumstances in which plaintiff [cannot] follow the prescribed methods," and gives "discretion to fashion *other means adapted to the particular facts of the case*" (emphasis added). *Dobkin v. Chapman*, 21 N.Y.2d 490 (N.Y. 1968).

Impracticability under N.Y. C.P.L.R. §308(5) "is incapable of easy definition," and its "meaning depends on the facts and circumstances surrounding each case." *Liebeskind v. Liebeskind*, 86 A.D.2d 207, 209-210 (N.Y. App. 1982) (personal and substitute service impracticable when defendant fled the state to avoid being personally served before effective date of marital property statute). A showing of impracticability "*does not* require proof of due diligence or of actual prior attempts to serve a party under each and every method provided in the statute" (emphasis added). *Saulo v. Noumi*, 119 A.D.2d 657 (N.Y. App. 1986) (personal and substitute service impracticable when attempted three times at defendant's business address and then it was determined he moved out of the country); *Franklin v. Winard*, 189 A.D.2d 717 (N.Y. App. 1993) (personal and substitute service impracticable when plaintiff unable to determine defendant's current place of residence); *Coyne v. Coyne*, 83 A.D.2d 774 (N.Y. App. 1981).

A plaintiff can demonstrate that conventional service is "impracticable" by "making diligent, albeit unsuccessful, efforts to obtain information regarding a defendant's current residence, business address or place of abode." *Snyder v.*

1  *Energy, Inc.*, 19 Misc.3d 954, 959 (N.Y. Civ. Ct. 2008).

2      The method then devised by the court "must be reasonably calculated to give

3  the defendant notice of the action and an opportunity to be heard." *Van Dunk v.*

4  *Lazrovitch*, 50 Misc.2d 649, 651 (N.Y. Civ. Ct. 1966) (service on defendant's

5  insurance carrier); *Franklin*, 189 A.D. 2d at 717 (service on defendant's attorneys);

6  *Dobkin*, 21 N.Y.2d 490 (service by publication); *Snyder*, 19 Misc.3d at 962 (service

7  by email, when plaintiff made showing that defendant is regularly online at address

8  that "by all indications is his").

9      Based upon Plaintiffs' prior dealings with Bennett, as well as comprehensive

10  searches of public records by Plaintiffs' counsel and Plaintiffs' investigator, it was

11  determined that Bennett's last known dwelling place or usual place of abode

12  appeared to be an apartment complex in New York City, New York.  Decl. Mandell,

13  ¶5; Decl. Grandsinger, ¶4.  A New York registered process server made several

14  attempts to serve Bennett there pursuant to N.Y. C.P.L.R. §308(1) or (2), to no avail.

15  *See* Aff. Granados.  On the second attempt, the process server determined that the

16  address was not the dwelling place of Bennett.  *Id.* at 4.  Consequently, the server

17  did not make the "nail and mail" service pursuant to N.Y. C.P.L.R. §308(4).

18      1.    New York Case Law Accepts Service Via E-Mail

19      As mentioned above, the Civil Court of the City of New York in *Snyder*

20  recognized that email has become a customary form of communication and may,

21  under certain circumstances, be reasonably calculated to provide notice to the

22  defendant.  *Snyder*, *supra*.  In *Snyder*, the plaintiff submitted affirmations from

23  attorneys, process servers, and the plaintiff to establish the impracticality of personal

24  or mailed service on defendants.  *Id.* at 954.  The plaintiff had demonstrated that

25  despite a rigorous search, it was unable to locate a valid home or business address

26  for either defendant.  *Id.* at 957.  Moreover, the defendants had abandoned their New

27  York and Connecticut addresses leaving no forwarded information.  *Id.*  However,

28  although defendants' physical location could not be established, one of the

1    defendants communicated with plaintiff on a handful of occasions via AOL instant

2    messenger and e-mail.  *Id.* at 957-58.   The *Snyder* Court concluded that defendant's

3    conduct demonstrated that he could be reached via email and, due to his regular

4    online presence and prior email communications, would receive notice of the

5    pending action if sent via email.  *Id.* at 963-64.

6          The *Snyder* Court further opined, in relevant part:

7                Over the last decade, the world has seen technology
                 advance on a scale and at a speed that staggers the
8                imagination; what is the latest technological innovation
                 one year is outmoded the next. And nowhere have these
9                advances been greater felt than in the area of
                 communications. Ten years ago we communicated largely
10               by telephone, mail or fax. Now it is e-mail that is the
                 preferred method of communication, both locally and
11               globally.

12

13                                    ***

14

15               Fortunately, the "broad constitutional principle"
                 underlying judicially devised alternate service "unshackles
16               the ... courts from anachronistic methods of service and
                 permits them entry into the technological renaissance."
17               *Rio Props. v. Rio Intl. Interlink,* 284 F.3d at 1017, as
                 quoted by **450 *Hollow v. Hollow,* 193 Misc.2d at 695,
18               747 N.Y.S.2d 704. In the proper circumstances, such as
                 those presented here, ***plaintiffs need not wait for the***
19               ***CPLR to be amended in order to be able to resort to***
                 ***service by e-mail. Our state courts already have the***
20               ***power to grant them the relief they seek***. (Emphasis
                 added.)
21

22

23          *Id.* at 963-64.

24          Here, Bennett has contacted Plaintiffs via their representatives numerous

25    times, even after the filing of this suit, viaand email.  Particularly, Bennett has

26    corresponded and continues to correspond with Plaintiffs' representatives via

27    <5150vaulted@gmail.com>.  Decl. Mandell, ¶7.

28
      3065732.1
                                          -9-

2.    <u>New York Law Permits Service of Process Via Facebook</u>

In a case of first impression, the Supreme Court of New York, New York County (a New York trial court), addressed the issue of whether a plaintiff-wife could serve her defendant-husband with a divorce summons solely via Facebook in *Baidoo v. Blood-Dzraku*, 48 Misc.3d 309 (N.Y. Sup. Ct. 2015).

The *Baidoo* Court granted an *ex parte* application permitting service of a divorce summons via Facebook where (a) the parties married in 2009 but never resided together; (b) the defendant vacated the last known address for him in 2011; (c) the defendant told the plaintiff he has no fixed address and no place of employment; (d) plaintiff's hired investigator was unable to locate the defendant; (e) the post office had no forwarding address for defendant; (f) the defendant had a "prepaid cell phone" with no linked billing address; and (g) the Department of Motor Vehicles had no record of the defendant. *Id.* at 312. The plaintiff submitted a supplemental affidavit attaching copies of Facebook exchanges she had with the defendant, identifying the defendant from photographs on his Facebook page, and demonstrating the defendant regularly logs onto his Facebook account. Under these circumstances, the Court permitted service via Facebook by plaintiff's attorney logging onto her account, messaging the defendant by identifying himself and attaching a copy of the summons or providing a web address for the summons, repeating this procedure for three consecutive weeks, and with the plaintiff and her attorney each to call and text message to inform him that the summons was sent via Facebook. *Id.* at 317.

Plaintiff has ample evidence that Bennett frequents his Facebook page, as he actively posts pictures and comments to his Facebook wall, which is public. Moreover, anyone with an active Facebook account can send Bennett a private message, including but not limited to, electronic attachments, via Facebook messenger. Decl. Narcise, ¶¶ 8-9, Exhs. 3, 4.

As Plaintiffs cannot determine an actual dwelling place or usual place of

abode for Bennett, service is impracticable under N.Y. C.P.L.R. §308(1), (2), and (4). Accordingly, this Court has the discretion under N.Y. C.P.L.R. §308(5) to direct service pursuant to methods reasonably calculated to give Bennett notice of the lawsuit and an opportunity to be heard, which is service directed to his most current contact – his email addresses and/or via Facebook private message.

## C. **Alternatively, Plaintiffs Request an Order to Permit Service on Bennett by Publication Pursuant to California Law.**

In California, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served," or "by leaving a copy of the summons and complaint during usual office hours in [the defendant's] office or, if no physical address is known, at [the defendant's] usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." California Code of Civil Procedure ("Cal. Civ. Proc.") §§ 415.10, 415.20(a).

If personal delivery cannot be made with reasonable diligence, then a summons may also be served "by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box," and "by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." *Id.* §415.20(b).

The Code also provides that "[a] summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." *Id.* §415.40. "[P]roof of service shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or

1    other evidence." *Id.* §417.20(a).

2        Finally, the Code allows for service by publication as an authorized manner of

3    service.  Cal. Civ. Proc. §415.50(a) provides, in pertinent part:

4            (a) A summons may be served by publication if upon
             affidavit it appears to the satisfaction of the court in which
5            the action is pending that the party to be served cannot
             with reasonable diligence be served in another manner
6            specified in this article and that either:

7

8            (1) A cause of action exists against the party upon whom
             service is to be made or he or she is a necessary or proper
9            party to the action.

10       Upon an order of publication, the court shall "order the summons to be

11   published in a named newspaper, published in this state, that is most likely to give

12   actual notice to the party to be served. If the party to be served resides or is located

13   out of this state, the court may also order the summons to be published in a named

14   newspaper outside this state that is most likely to give actual notice to that party.

15   The order shall direct that a copy of the summons, the complaint, and the order for

16   publication be forthwith mailed to the party if his or her address is ascertained

17   before expiration of the time prescribed for publication of the summons." *Id.* (b).

18   Publication shall be made according to the California Government Code Section

19   6064 and shall be deemed complete as provided in that section[1].

20           1.    Bennett Cannot Be Served Despite Reasonable Diligence by

21                 Plaintiffs

22       "Reasonable diligence" denotes a "thorough, systematic investigation and

23

24       [1] Publication of notice pursuant to this section shall be once a week for four (4)
25   consecutive weeks.  Four publications in a newspaper regularly published once a week or oftener,
     with at least five (5) days intervening between the respective publication dates not counting such
26   publication dates, are sufficient.  The period of notice commences with the first day of publication
     and terminates at the end of the twenty-eighth day, including therein the first day.  Cal. Gov't.
27   Code §6064.

28

1   inquiry conducted in good faith by the party or his agent or attorney." *Watts v.*
2   *Crawford*, 10 Cal.4th 743, 749 (Cal. 1995) ("A number of honest attempts to learn
3   defendant's whereabouts or his address by inquiry of relatives, . . . and by
4   investigation of appropriate city and telephone directories, [voter registries, and
5   assessor's office property indices situated near the defendant's last known location],
6   generally are sufficient.").

7           As detailed in the Declarations of First Legal Investigator Jason Grandsinger
8   and paralegal John Narcise, counsel for Plaintiffs have undertaken a diligent search
9   of the public records to ascertain the current address of Bennett so that he could be
10  served through conventional methods.  The WestlawNext PeopleMap Report
11  includes bankruptcy records, corporate affiliations, deed transfers, historical person
12  locaters, liens and judgments, motor vehicle registrations, phone records, tax
13  assessor records and utility locators.  Decl. Narcise ¶3, Exh. 1.

14          The public records searches revealed the latest addresses being a New York
15  residential address.  Decl. Grandsinger ¶4.  Counsel for plaintiffs also tried without
16  success to effectuate service by sending a copy of the summons and complaint to
17  Bennett, via registered mail, return-receipt requested, from Los Angeles to New
18  York City pursuant Cal. Civ. Proc. §415.40 and §417.20(a).  Decl. Narcise, ¶7.

19              2.    Cause of Action Exists Against Bennett and He Is A Necessary
20                    Party

21          The second requirement of the publication statute, that a cause of action exists
22  against the person to be served <u>and</u> that the person is a necessary party, also are
23  satisfied here.  In their Complaint, Plaintiffs assert that this action arises <u>solely</u> from
24  Bennett's actions, i.e., Bennett's intentional infringement of Plaintiffs' copyrights,
25  Bennett's cybersquatting, Bennett's violation of California statues and common law
26  for misappropriation of Plaintiffs' rights of publicity, and Bennett's breach of
27  contract.  *See* Dkt No. 1, Complaint, ¶4; Decl. Mandell, ¶3-4.  Essentially, but for
28  Bennett's actions, there would be no present lawsuit.

EX PARTE APPLICATION FOR ORDER AUTHORIZING ELECTRONIC SERVICE
OR, ALTERNATIVELY, SERVICE BY PUBLICATION

1      Since counsel has made reasonably diligent efforts to serve Bennett to no

2  avail, and a cause of action exists against him as the sole defendant, this Court

3  should alternatively order Bennett served by publication under California law.

4  **IV.**   **CONCLUSION**

5      For these reasons, Plaintiffs respectfully request that the Court grant this

6  application.

7

8  DATED: April 20, 2018        WOLF, RIFKIN, SHAPIRO,

9                          SCHULMAN & RABKIN, LLP

10

11                          By: _____ /s/ Mark B. Mizrahi _____

12                              MARK B. MIZRAHI

13                          Attorneys for Plaintiffs E.L.V.H., Inc. and Edward Van Halen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3065732.1

-14-