1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  E.L.V.H., Inc., a California corporation;        Case 2:18-cv-00710 ODW (PLAx)
    and Edward Van Halen, an individual,
12                                                   **PRELIMINARY INJUNCTION**
                Plaintiffs,                          **AND IMPOUND ORDER**
13
         vs.
14
    Andrew Bennett, an individual,
15
                Defendant.
16

17

18

19       Plaintiffs E.L.V.H., Inc. ("ELVH") and Edward Van Halen ("Mr. Van Halen")

20  (collectively, "Plaintiffs"), applied to this Court *ex parte* against Defendant Andrew

21  Bennett ("Defendant") for a temporary restraining order and an order to show cause

22  for a preliminary injunction and impoundment order pursuant to Federal Rule of Civil

23  Procedure 65 and the Copyright Act (17 U.S.C. § 101, et seq.) for the reasons that

24  Defendant is: (i) copying, displaying, distributing and creating derivative works from

25  ELVH's copyrights; (ii) breaching his contracts with Plaintiffs; and (iii) violating Mr.

26  Van Halen's rights of publicity under California statutory and common law (the "TRO

27  Application").  (ECF No. 19.)

28       On May 14, 2018, this Court granted the TRO Application and ordered

Defendant to show cause in writing as to why an order pursuant to Rule 65 of the Federal Rules of Civil Procedure and 17 U.S.C. §503(a) should not be entered along the lines set forth in this Preliminary Injunction Order and set a hearing date of May 21, 2018. (ECF No. 22.) Plaintiff appeared at the May 21, 2018 hearing, however, Defendant failed to show cause in writing or appear.

In a Minute Order dated May 21, 2018, the Court ordered that the preliminary injunction will issue (ECF No. 27);

NOW, THEREFORE, good cause appearing, the Court hereby finds and orders as follows:

**FACTUAL FINDINGS:**

a.  ELVH has shown it is likely to establish that the Defendant is copying, displaying, distributing and creating derivative works from ELVH's copyrights;

b.  Plaintiffs have shown they are likely to establish that Defendant is breaching his contracts with Plaintiffs;

c.  Mr. Van Halen has shown that he is likely to establish that Defendant is violating Mr. Van Halen's rights of publicity under California statutory and common law;

d.  Plaintiffs have established that they are entitled to injunctive relief by demonstrating that (1) they are likely to succeed on the merits of their claims; (2) they are suffering irreparable injury and, in the absence of an injunction, they will continue to suffer irreparable injury based on the Defendant's infringement, breach and misappropriation; (3) remedies at law, such as money damages, are inadequate to compensate for Plaintiffs' injuries; (4) the balance of hardships favors Plaintiffs; and (5) granting Plaintiffs' request for injunctive relief would serve the public interest; and

e.  Plaintiffs have demonstrated that the harm to them from the denial of the

1  requested Preliminary Injunction Order outweighs the harm to

2  Defendant's legitimate interests in granting such an order;

3  **PRELIMINARY INJUNCTIVE AND IMPOUND ORDER**

4  THEREFORE, pursuant to Rule 65 of the Federal Rules of Civil Procedure

5  and 17 U.S.C. § 503(a), the Court enters the following Preliminary Injunction and

6  Impoundment Order that shall remain in place until the Court orders otherwise:

7  A.  Defendant, his agents, employees, servants, and attorneys, and all

8  persons acting in concert or in participation with any of them, who receive actual

9  notice of it by personal service or otherwise, are hereby restrained and enjoined

10  from:

11            i.  engaging in unauthorized copying, display, use, and public

12                distribution of ELVH's copyrighted content, or creating

13                unauthorized derivative works from ELVH's copyrighted content,

14                as more fully described in the Settlement Agreement and Release

15                attached hereto as Exhibit 2 as "all video footage and audio files

16                [filmed by Andrew Bennett] that in any way deals with, pertains

17                to, or covers ELVH, Van Halen or [] Edward Van Halen,"

18                including but not limited to all video footage recorded by

19                Defendant at 5150 beginning on or around 2003 and ending on or

20                around 2007 (collectively, the "Copyrighted Content");

21            ii.  disclosing, either directly or indirectly, any information obtained

22                or learned by Defendant relating to ELVH and/or Mr. Van Halen,

23                his business, his personal or professional activities, finances, or

24                EVH's family friends or acquaintances or otherwise breaching his

25                contracts with Plaintiffs, including without limitation, the

26                Confidentiality Agreement attached hereto as Exhibit 1 and the

27                Settlement Agreement and Release attached hereto as Exhibit 2;

28            iii.  using Mr. Van Halen's name, voice, photograph and likeness for

Defendant's commercial advantage on and in connection with THE 5150 VAULT and in promoting himself, and/or his other goods and services, without Mr. Van Halen's permission or consent;

    iv.    communicating directly with Plaintiffs or Matthew Bruck;

    v.    assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (i) through (iv), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (iv).

B.    Defendant, his agents, employees, servants, and attorneys, and all persons acting in concert or in participation with any of them, who receive actual notice of it by personal service or otherwise, shall, no later than seven (7) days from the date of this Order, surrender to Plaintiffs: (i) all infringing copies of the Copyrighted Content including, without limitation, all copies of The 5150 Vault and previews or trailers therefor; and (ii) all plates, computer file storage devices, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced.

C.    Defendant, his agents, employees, servants, and attorneys, and all persons acting in concert or in participation with any of them, who receive actual notice of it by personal service or otherwise, shall, no later than seven (7) days from the date of this Order, remove all infringing copies of ELVH's copyrighted content including, without limitation, all copies of The 5150 Vault and previews or trailers therefor, from the Internet, including, without limitation, from YouTube.

///

///

1  ///

2       D.    The Court acknowledges that Plaintiffs have already posted with the

3  Clerk of this Court an attorney's check in the amount of $10,000 as security, which

4  the Court determines to be adequate for the payment of damages as any person may

5  be entitled to recover as a result of a wrongful restraint hereunder.

6

7       **IT IS SO ORDERED**.

8       May 25, 2018

9  _____

10                 **OTIS D. WRIGHT**
          **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# CONFIDENTIALITY AGREEMENT

Dated: **2/10/07**

I, _ANDREW BENNETT_, acknowledge that in the course of my association with Edward Van Halen; ELVH, Inc.; the band Van Halen; SLLAB LLC; and DA-Fishaid, LLC (individually and collectively referred to herein as "EVH") I will be, or have been, exposed to information of a personal and private nature regarding EVH and his affiliated business entities, family, friends and acquaintances. I also understand that because EVH is a public figure, and because many of those with whom he associates are public figures, such information may be of great interest to the general public.

I know that EVH desires to keep all of such information confidential. Commencing on the date on which my employment or association with EVH began, for good and valuable consideration, receipt of which is acknowledged, I hereby agree that a confidential relationship exists between EVH and me. I agree that all information that I receive during the course of my employment, or by virtue of my association with EVH, whether or not such information is received directly from EVH, will be considered information received in confidence.

I agree that I will not, at any time, disclose either directly or indirectly, any information obtained or learned by me relating to EVH, his business, his personal or professional activities, finances, or EVH's family, friends or acquaintances, without the prior written consent of EVH, except as I may be required to do so by law. If a dispute arises between EVH and me, this Agreement shall not be construed so as to prevent me from disclosing such information to my attorney or other advisor in such matter, or in any court proceedings or arbitration. I further agree that I will not use or disclose or authorize anyone else to use or disclose any such information for any reason not authorized by EVH, nor will I aid in any way, either directly or indirectly, any person in discovering or making use of such information without the prior written consent of EVH.

I further agree that I will not lend my name as source nor as author, nor co-author of any book, journalistic article (either magazine, newspaper, or any and all other medium), photoplay, stage play, radio program, Internet or any other such medium for the conveyance of information that concerns EVH without the prior written consent of EVH.

I understand that EVH is the sole and exclusive owner of all such information and all of the results and proceeds thereof. I hereby authorize EVH to send a copy of this Agreement to any person to whom I may have disclosed such information.

In any suit or proceeding arising from or connected to this Agreement, the prevailing party shall pay the cost of such litigation including, but not limited to, reasonable attorney fees. I further agree that it would be difficult to determine the damages, with precision, that would be suffered by EVH in the event that I breach or violate this Agreement. Therefore, in the event of my breach or violation in any manner of any provision of this Agreement, I agree to pay to EVH liquidated damages in an amount equal to the sum of Two Hundred Fifty Thousand Dollars ($250,000) and One Hundred Percent (100%) of all gains, whether money or property, that I or any firm or corporation that I own or control receives from any source as a result of my breach of

2921.003\78693.1

EXHIBIT 1 - 5

this Agreement. I agree that this sum is a reasonable forecast of the damages that would be sustained by EVH in the event of such a breach. In the event that I do not receive any money or property as a result of my breach of this Agreement, the provisions of this paragraph shall not be deemed to waive or limit money damages to which EVH might otherwise be entitled.

I further understand that the breach of this agreement will cause EVH irreparable injury and damage and that money damages may not be sufficient remedy for a breach of this agreement and therefore, in addition to any other rights and remedies EVH may have, I agree that EVH shall be entitled to injunctive and other equitable relief without further notice to me.

The exercise of any right or remedy specified in this Agreement shall not preclude the exercise or enforcement of any other right or remedy herein.

I understand that the termination of my association or employment with EVH shall not terminate the force and effect of this Agreement.

ANDREW BENNETT
Print Name

Signature

1431 OCEAN AVE. # 1604
Street Address

SANTA MONICA, CA. 90401
City, State   Zip

2/20/07 03
Date

EXHIBIT 1 - 6

# EXHIBIT 2

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (this "Agreement") is entered into as of August 3l, 2015 (the "Effective Date"), by and among ELVH, Inc., a California corporation and Edward Van Halen, an individual, (collectively referred to throughout this Agreement as "ELVH") on the one hand, and Andrew Bennett, an individual, ("AB") on the other hand. ELVH and AB are sometimes referred to herein individually as a *"Party"* and collectively as the *"Parties"*.

### RECITALS:

- In or around 2003 AB filmed and/or audio recorded Edward Van Halen for what was purported to be a long form DVD or video project;

- AB claims that in connection with such filming and audio recording ELVH owes AB for services rendered that remain unpaid;

- ELVH rejects any payment obligation in connection therewith and makes demand to return any and all footage shot in connection therewith.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

- **No Admissions**. Each Party has entered into this Settlement Agreement and Release voluntarily. Nothing herein shall be construed as indicating, acknowledging or conceding any position taken or allegation or fact asserted by any Party with respect to any claim.

- **Settlement Terms**.

    - AB shall transfer to ELVH's designee (such designee shall be Jeffrey R Cohen, Esq.), prior to ELVH transferring to AB the Settlement Amount, all video footage and audio files ("EVH Content") that in any way deals with, pertains to, or covers ELVH, Van Halen or, more specifically, Edward Van Halen, as specified in Attachment A, which is expressly incorporated herein by reference. The Parties' clear understanding is that after this matter is settled AB shall no longer possess itself, or through any agents, affiliates or any third parties any EVH Content. In addition, AB assigns to ELVH any and all intellectual property rights in the EVH Content and agrees to sign any paperwork in order to evidence the same merely upon request. .

    - ELVH agrees to pay to AB a one-time Settlement Amount of Seven Thousand Five Hundred ($7,500.00) U.S. Dollars. Payment shall be made by check and delivered to AB no later than three business days after full execution of this Agreement and AB's delivery of all EVH Content and a

1

EXHIBIT 2 - 7

signed affidavit, under penalty of perjury, that it no longer possesses any EVH Content. Counsel for ELVH shall provide AB with any and all documents it contends that AB is required to sign by virtue of this Agreement, including but not limited to the affidavit referenced above, concurrently with its presentation to AB of this Agreement for his execution, which AB shall execute and transmit to ELVH concurrently with the EVH Content.

- **Releases**

    - **Release by ELVH**. ELVH expressly agrees to fully waive, release, acquit and forever discharge all claims existing as of the Effective Date that it or they may have against AB, or any Representative of AB, including any claims for breach of contract, liquidated damages, attorneys' fees and other costs incurred.

    - **Release by AB**. AB expressly agrees to fully waive, release, acquit and forever discharge all claims existing as of the Effective Date that he may have against ELVH, and/or any Representative of ELVH, including any claims for breach of contract, liquidated damages, attorneys' fees and other costs incurred in connection with this matter.

    - **Release of Unknown Claims**. The Parties acknowledge that the releases in this Agreement may include a release of claims that are unknown or unsuspected. The Parties hereby waive any common law or statutory doctrine or provision that limits the effect of a release of unknown or unsuspected claims. The Parties specifically acknowledge and agree that they are aware of and familiar with the provisions of Section 1542 of the California Civil Code, which provides as follows:

        - A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

    - The Parties hereby waive and relinquish all rights and benefits that they have or may have under Section 1542 or any other statute that would limit the effect of the foregoing releases. The Parties intend the releases set forth in this Agreement to be a general release.

    - **Liquidated Damages**. It is acknowledged that a breach by AB of the terms and conditions of Paragraphs 2, 7(k) and 7(l) will cause ELVH to incur damages and losses of types and in amounts that will be impossible to ascertain with certainty as a basis for recovery of actual damages, and that liquidated damages represent a fair, reasonable, and appropriate estimate thereof. Accordingly, if AB fails to abide by the terms and

2

EXHIBIT 2 - 8

conditions of this Agreement liquidated damages in an amount equal to $100,000.00 per month for each violation by AB of the terms and conditions of this Agreement, shall be assessed and recovered by ELVH from AB without ELVH being required to present evidence of the amount or character of actual damages. Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty. Nothing herein prohibits or shall impair ELVH''s rights to seek additional damages or equitable relief in connection therewith.

- **Right To Enforce Agreement**. Notwithstanding anything herein to the contrary, each Party specifically and expressly reserves the right to enforce the obligations and duties expressly set out in this Agreement. The prevailing Party and/or Parties in any suit for violation of the Agreement and/or to enforce its terms shall be entitled to recover its and/or their attorneys' fees and costs.

- **Attorneys' Fees and Costs**. Each Party shall bear its own attorneys' fees and costs in connection with this Agreement.

- **Miscellaneous**.

    - **No Assignment**. Each Party represents and warrants to the other Parties that such Party has not and will not in any manner, assign, transfer, convey, sell, or purport to assign, transfer, convey or sell to any third party any cause of action, chose in action, or part thereof against the other Parties arising out of or in any way related to the matters set forth in this Agreement.

    (b)     **Binding Effect**. This Agreement is and shall be binding upon and inure to the benefit of each Party and such Party's heirs, executors, agents, attorneys, successors, assigns, trustees and administrators.

    (c)     **Representations and Warranties**. Each Party represents and warrants to the other Parties that:

        (i)     such Party has taken all necessary corporate or legal actions to duly approve the making and performance of this Agreement and that no further corporate or other approval is necessary;

        (ii)     this Agreement constitutes the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

        (iii)     if applicable, the individual executing this Agreement on behalf of such Party is fully authorized by such Party to so act on such Party's behalf;

        (iv)     the making and performance of this Agreement will not violate any provision of law or, if applicable, of such Party's charter,

3

EXHIBIT 2 - 9

articles of incorporation, or by-laws, or any agreement with any other third party;

(v) the promises that were made to induce the Agreement are limited to the set forth in this Agreement; and

(vi) such Party: (a) has read this Agreement; (b) understands its terms; (c) has had the opportunity to investigate the claims that this Agreement is settling and the terms of this Agreement and regards the terms of this Agreement as reasonable and a good faith compromise; (d) executes this Agreement freely, voluntarily without coercion, with full knowledge of its significance and the legal consequences thereof; (e) has been represented by counsel or afforded the opportunity to obtain counsel and knowingly waived same; and (f) has analyzed and agrees that the covenants contained herein are reasonable and enforceable.

(d) **Notices**. All notices or other communications which a Party desires or is required to give under this Agreement shall be given in writing and shall be deemed to have been given if hand-delivered, delivered by courier, sent by fax or mailed by depositing in the United States mail or overnight mail or delivery service, postage prepaid, to the Party at the address noted below or such other address as a Party may designate in writing from time to time. If a Party does not provide notice of any change of person to be contacted, notice to the person below shall be deemed effective notice.

If to AB:

Kevin Jackson, Esq.
3303 Donna Drive
Carlsbad, California 92008
949-873-3580
kevpjack@gmail.com

If to ELVH:

Jeff Cohen, Esq.
Millen White Zelano & Branigan P.C.
2200 Clarendon Blvd., Suite 1400,
Arlington Courthouse Plaza I
Arlington, VA 22201
703-243-6333
Fax 703-243-6410
cohen@mwzb.com

4

EXHIBIT 2 - 10

(e) **Entire Agreement; Amendment**. This Agreement contains the entire agreement among the Parties with respect to the subject matter hereof, and supersedes all other prior discussions, agreements and understandings, both oral and written, among them with respect thereto. No inducement, warranty or representation other than as set forth herein has been made or offered, or relied or agreed upon. This Agreement may not be amended except by written agreement signed by the Parties after the date hereof and any additional agreement among the Parties is only valid if contained in a writing signed by the Parties.

(f) **Governing Law; Jurisdiction**. This Agreement shall be governed and construed in accordance with the laws of the State of California, without regard to its choice of law rules and without regard to conflicts of laws principles. The Parties agree to submit themselves to the jurisdiction of the federal and state courts in Los Angeles County, California, for the enforcement, interpretation and construction of this Agreement and all other matters regarding or relating thereto.

(g) **Severability**. If any provision of this Agreement is held invalid, illegal or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect. The Parties hereto further agree that if any provision contained herein is, to any extent, held invalid, illegal or unenforceable in any respect under the laws governing this Agreement, they shall take any actions necessary to render the remaining provisions of this Agreement valid, legal and enforceable to the fullest extent permitted by law and, to the extent necessary, shall amend or otherwise modify this Agreement to replace any provision contained herein that is held invalid, illegal or unenforceable with a valid, legal and enforceable provision giving effect to the intent of the parties hereto.

(h) **Counterparts**. This Agreement may be executed by the Parties in counterparts and may be executed by a signature page delivered by facsimile or email, each of which shall be deemed an original and all of which together shall be deemed one and the same instrument.

(i) **Understanding and Acknowledgment of Terms**. This Agreement was negotiated by the Parties at arm's length, and each Party represents that such Party has independently taken steps to understand and/or has been fully advised by such Party's attorney about the effect and significance of entering into this Agreement. Each Party further represents that AB has the right to, and has been advised to, consult with any attorney of his own choosing to review this Agreement. Each Party additionally represents that such Party has read, understood and agreed to the terms and conditions stated herein and has received a copy hereof. Each Party acknowledges and agrees that the conditions, terms, and obligations set forth herein constitute material consideration for this Agreement. No Party will be entitled to have any language contained in this Agreement construed against another Party because of the identity of the drafter

5

EXHIBIT 2 - 11

hereof.

(j)  **Headings**.  Titles or headings contained in this Agreement are included only for convenience of reference and will have no substantive effect.

(k)  **Confidential**. The terms and conditions of the Agreement as well as the underlying nature of anything either party has learned in connection about the other based on this relationship is deemed confidential and shall not be disclosed by any and all means without the express written permission of the other party. Such permission may be rejected for any reason whatsoever or no reason at all.

(l)  **Future Communication**. The parties to this Agreement shall not communicate directly. Any communication between the parties that is legally required shall be handled through their respective attorneys.  Under no circumstances shall AB contact ELVH, Edward Van Halen or Matthew Bruck without their prior written consent.

AGREED TO:

_____
Andrew Bennett

_____
ELVH, Inc.

_____
Edward Van Halen

6

EXHIBIT 2 - 12

hereof.

     (j)    **Headings**. Titles or headings contained in this Agreement are included only for convenience of reference and will have no substantive effect.

     (k)    **Confidential**. The terms and conditions of the Agreement as well as the underlying nature of anything either party has learned in connection about the other based on this relationship is deemed confidential and shall not be disclosed by any and all means without the express written permission of the other party. Such permission may be rejected for any reason whatsoever or no reason at all.

     (l)    **Future Communication**. The parties to this Agreement shall not communicate directly. Any communication between the parties that is legally required shall be handled through their respective attorneys. Under no circumstances shall AB contact ELVH, Edward Van Halen or Matthew Bruck without their prior written consent.

AGREED TO:

_____
Andrew Bennett

_____
ELVH, Inc.

_____
Edward Van Halen

EXHIBIT 2 - 13

Attachment A

The "EVH Content" is comprised of the following: All Van Halen footage currently in Andrew Bennett's possession, which is contained on a single hard drive, including, without limitation:

- Footage of Van Halen, including but not limited to Edward Van Halen, filmed by Andrew Bennett, between October 7, 2006 and June 25, 2007, which totals 365.71 gigabytes; and
- Footage of Edward Van Halen filed on April 26, 2004, which totals 843 megabytes.

All EVH Content currently in Andrew Bennett's possession is contained on a single hard-drive.

EXHIBIT 2 - 14

# AFFIDAVIT AND ASSIGNMENT
## ANDREW BENNETT

I, Andrew Bennett, under penalty of perjury, hereby depose and say that the following is true:

1.      As of the date of this Affidavit and Assignment, neither I nor any of my affiliates possess any video footage and/or audio files ("EVH Content") that in any way deals with, pertains to, or covers, Edward Van Halen.

2.      For good and valuable consideration, the receipt of which is hereby acknowledged, I hereby grant, transfer, convey and assign to ELVH, Inc. and/or Edward Van Halen (collectively referred to throughout this Affidavit and Assignment as "ELVH") its successors and assigns, all of my right, title, and interest in and to all work and materials identified on Exhibit A (the "Assets"), which exhibit is attached hereto and incorporated by this reference, including the copyright, patent, trade secret rights, and all other right, title, and interest therein. This exclusive conveyance shall include, but is not limited to, the rights to publish, reproduce, transmit, adapt, prepare derivative works, sell, or otherwise make use of the Assets throughout the world, in any form or medium and in any language, and to license or otherwise transfer to others the rights commensurate herewith in connection with the Assets.

3.      Without limiting its rights, ELVH shall have the sole and exclusive right in perpetuity and throughout the world to use the Assets, or any part thereof, and to seek copyright and/or patent registrations thereon throughout the world, and renewals, reissues and extensions of such registrations, and the right to sue for and to obtain any recoveries for past and future infringements thereof.

4.      I warrant to ELVH, and its successors and assigns, that on the date hereof I am the lawful owner of good and marketable title in and to the Assets and have the full legal rights to assign the same. I warrant that the Assets are original, do not infringe upon the rights of any third party, and have not been previously assigned, licensed or otherwise encumbered. I shall indemnify and save and hold ELVH harmless from any and all damages, liabilities, costs, losses and expenses (including legal costs and reasonable attorneys' fees) arising out of or connected with any claim, action, demand or suit by a third party arising out of the breach of any of the warranties made by me in this Affidavit and Assignment.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

//

//

//

EXHIBIT 2 - 15

//

//

EXHIBIT 2 - 16

5.    I also agrees to execute any additional documents that may become necessary to give full effect to this Affidavit and Assignment.  I irrevocably appoints ELVH as my attorney-in-fact solely for the purpose of executing such documents in my name.


Dated:    August _27_, 2015       Andrew Bennett

                                  _____
                                  [Signature]


## ACKNOWLEDGMENT

State of California
County of _____ )

On _____ before me, _____
                                     (insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _See attached_
          (Seal)

EXHIBIT 2 - 17

# ALL-PURPOSE ACKNOWLEDGMENT

Title of Document: *Affidavit of Assignment*

Date of Document: *8/27/15*

--------------------------------------------------------------------

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )
                                )ss.

County of _San Diego_____ )

On _8/27/15_____ before me, ____Cindy Long_____, Notary Public,

personally appeared _Andrew Bennett_____

_____,

who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cindy Long_____

**CINDY LONG**
COMM. # 2031534
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. JULY 26, 2017

FOR NOTARY STAMP

EXHIBIT 2 - 18

## EXHIBIT A

All Van Halen footage currently in Andrew Bennett's possession, which is contained on a single hard drive, including, without limitation:

Footage of Van Halen, including but not limited to Edward Van Halen, filmed by Andrew Bennett, between October 7, 2006 and June 25, 2007, which totals 365.71 gigabytes; and

Footage of Edward Van Halen filed on April 26, 2004, which totals 843 megabytes.

EXHIBIT 2 - 19