# United States District Court
# Central District of California

| | |
|---|---|
| E.L.V.H. INC.; EDWARD VAN HALEN<br><br>     Plaintiffs,<br><br>  v.<br><br>ANDREW BENNETT,<br><br>     Defendant. | Case No. 2:18-cv-00710-ODW (PLAx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [34]** |

## I. INTRODUCTION

Plaintiffs E.L.V.H. Inc. and Edward Van Halen (collectively "Van Halen") move for default judgment against Defendant Andrew Bennett ("Bennett") in this copyright infringement and breach of contract action ("Motion"). (ECF No. 34.) For the reasons discussed below, the Court **GRANTS** Van Halen's Motion.[1]

## II. BACKGROUND

Since 2006, Van Halen invited Bennett to film him and others at his recording studio named 5150, located in Los Angeles, California. (Compl. ¶¶ 5–7, 9, ECF No. 1.) Van Halen instructed Bennett to film the rehearsals and later use the film footage

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

and audio files ("Subject Material") to make a long-form DVD or video project. (Compl. ¶¶ 5–7, 9.) Bennett signed a "Confidentiality Agreement" on February 20, 2007. (Compl. ¶10, Ex. 1 ("Confidentiality Agreement"), ECF No. 1-1.) In this agreement, Bennett acknowledged that he would be exposed to personal and private information of Van Halen, and agreed not disclose any information obtained or learned by him relating to Van Halen, "his business, his personal or professional activities, finances, or EVH's family friends or acquaintances, without the prior written consent of EVH." (Confidentiality Agreement 1.)

The Subject Material was never used commercially, and years later, Bennett threatened to release the Subject Material, claiming that Mr. Van Halen never paid him. (Compl. ¶ 11.) On August 31, 2015, the parties entered into a Settlement Agreement and Release, which required Bennett to transfer the Subject Material and all other video footage and audio files to Van Halen. (Compl. ¶13; Preliminary Injunction and Impoundment Order ("Prelim. Inj."), Ex. 2 ("Settlement Agreement"), ECF No. 28). The Settlement Agreement required Bennett to provide to Van Halen his copies of the Subject Material and to transfer the copyrights therein. (*See* Settlement Agreement.) Bennett also signed an "Affidavit and Assignment" in which he swore under penalty of perjury that he does not "possess any video footage and/or audio files . . . that in any way deals with, pertains to, or covers," Van Halen. (Settlement Agreement 15.) The Affidavit and Assignment also transfers the copyright in the Subject Material to Van Halen. (Settlement Agreement 15.)

Van Halen alleges that Bennett released the Subject Material on the website "http://5150vault.com.," and thereby, breached the Confidentiality Agreement and Settlement Agreement. (Compl. ¶ 17.) Van Halen then issued a copyright notice to the hosting provider, GoDaddy.com, and duly suspended the website. (Compl. ¶ 19.) Bennett subsequently posted the Subject Material on another website, "http://thefiftyonefiftyvault.com." (Compl. ¶ 21.) In addition to its copyrights, Van Halen owns various trademarks, including the "family of 5150-formative trademarks

used in connection with various goods and services including amplifiers and speaker systems." (Compl. ¶ 25.)

On January 26, 2018, Van Halen sued Bennett and sought injunctive relief. (*See* Compl.) On May 25, 2018, the Court entered a Preliminary Injunction that enjoined Bennett from distributing the Subject Material and restrained him from breaching the Confidentiality Agreement and Settlement Agreement with Van Halen. (Prelim. Inj.)

Van Halen alleges that Bennet has violated the Court's Preliminary Injunction. For example, in an email to John Narcise ("Narcise"), Bennett revealed that he was entertaining offers for purchase of his copies of the Subject Material and book publishing deals regarding his past interactions with Van Halen. (Decl. of John Narcise ("Narcise Decl.") ¶¶ 4–5, Ex. 1 ("Email"), ECF No. 34-3.) Bennett has also failed to surrender copies of the Subject Material as required by Section 1(B) of the Preliminary Injunction which requires Bennett to surrender copies of the Subject Material in his possession within seven (7) days of the issuance of the impoundment Order. (Narcise Decl. ¶ 5; Prelim. Inj.)

Bennett has failed to appear before this Court, and accordingly, on August 31, 2019, Van Halen requested entry of default, which the Clerk of the Court granted. (Default, ECF No. 32.) Van Halen now seeks default judgment against Bennett.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as Local Rules 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or

3

active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (5) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "[A] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). In exercising discretion, a court must consider several factors (the "*Eitel* Factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the [FRCP] favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

Van Halen has complied with the relevant procedural requirements for default judgment against Bennett and has established that the *Eitel* factors favor default judgment on all claims.

### A. Procedural Requirements

Van Halen has complied with the relevant procedural requirements for entry of default judgment against Bennett by submitting a declaration which states: (1) the Clerk entered default against Bennett on September 3, 2019; (2) the default was entered on the Complaint appearing at ECF No. 1; (3)&(4) Bennett is not an infant, incompetent

person, or active service member so the Servicemembers Civil Relief Act does not apply; and (5) Bennett has failed to appear or otherwise respond to the Complaint. (Decl. of Eric Levinrad ("Levinrad Decl.") ¶¶ 10–12, ECF No. 34-2.) Bennett has failed to make an appearance in this action, and as such, service of notice of this application for entry of default judgment on Bennett is not required by Fed. R. Civ. Pr. 55(b)(2). (Mot. 6.) Therefore, Van Halen has satisfied the requirements of FRCP 54(c) and 55, as well as Local Rule 55-1.

**B.** *Eitel* **Factors**

Van Halen seeks default judgment as to all five of its causes of action. (Mot. 7–11.) The Court finds the *Eitel* factors weigh in favor of entering default judgment as to all of Van Halen's causes of action.

### *1. Possibility of Prejudice to Plaintiff*

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Bennet has failed to appear or participate in this action. Absent entry of default judgment, Van Halen is without recourse to recover. Accordingly, this factor weighs in favor of default judgment.

### *2. Substantive Merits & 3. Sufficiency of the Complaint*

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (quoting *PepsiCo*, 238 F. Supp. 2d at 1175). To weigh these two factors, the Court must evaluate the merits of each cause of action.

**Copyright Infringement**

To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Van Halen has met the first requirement for copyright infringement by demonstrating ownership of a valid copyright in the Subject Material. Foremost, Van Halen has provided evidence demonstrating registration of the Subject Materials with United States Copyright Office. (*See* Compl., Exs. 9–10.) Therefore, Van Halen has made a prima facie showing of ownership. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000) ("Registration is prima facie evidence of the validity of a copyright."). Since, Bennett has not appeared to rebut this showing, the Court concludes that Van Halen owns a valid copyright in the Subject Material.

Van Halen has also met the second requirement for copyright infringement. Specifically, Van Halen alleges copying by asserting that Bennett had retained a copy to the Subject Material and produced, distributed and/or sold infringing copies of the Subject Material on the following websites: http://5150vault.comand and http://thefiftyonefiftyvault.com. (Compl. ¶¶ 29–30.) Through the evidence provided, Van Halen has demonstrated that (1) the Bennett had access to the copyrighted work prior to the Subject Material being released; and (2) Bennett released the infringing copies of the Subject Material on his websites. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (finding defendant had committed copyright infringement by distributing without authorization copies of the copyrighted materials on the internet). Therefore, the Court finds that the well-pleaded allegations in the Complaint state a claim for copyright infringement.

**Cybersquatting**

Under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), cybersquatting "occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). The ACPA authorizes a

trademark owner to bring a civil suit against any person who: "'(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to or [in certain cases] dilutive of that mark . . . .'" *Verizon California Inc. v. Navigation Catalyst Sys., Inc.*, 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008) (quoting 15 U.S.C. § 1125(d)(1)(A)).

First, Van Halen alleges that he holds copyright protections in the 5150 mark and that Bennett "registered, trafficked in, and/or used domain names that are identical or confusingly similar to the 5150 mark, which was distinctive at the time [Bennett] registered the domain names." (Compl. ¶¶ 35, 37.) Accordingly, the Court finds that Bennett's websites use the identical or confusingly similar marks as Van Halen's 5150 mark. (Compl. ¶¶ 37–38.); *Wilens v. Doe Defendant No. 1*, No. 3:14-CV-02419-LB, 2015 WL 4606238, at *13 (N.D. Cal. July 31, 2015) (Courts compare the plaintiff's mark with the name of the website in determining whether there is a likelihood of confusion under the ACPA.)

Second, Van Halen further alleges that Bennett "had a bad-faith intent to profit from the 5150 mark." (Compl. ¶ 36.) The Court finds that Van Halen has sufficiently alleged bad-faith intent to profit because: (1) Bennett has released the Subject Material on his own websites (Compl. ¶¶ 11, 37–38) and (2) Bennett responded to this Court's preliminary injunction by stating "I say this with the utmost respect to you, the legal profession and the justice system. Ed's lawsuit means nothing to me. Nothing." (Decl. Narcise ¶ 3; Email.) Clearly, Bennett's alleged conduct constitutes bad-faith intent to profit off of Van Halen's 5150 mark. Therefore, Van Halen's Complaint properly states a meritorious claim for violation of the ACPA.

**Use of Name or Likeness**

California Civil Code Section 3344 provides in relevant part, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner . . . for purposes of advertising . . . without such person's prior consent . . . shall be liable for any damages sustained by the person." Cal. Civ. Code § 3344(a). Section

3344, unlike a common law claim, requires a plaintiff to establish: (1) a "knowing" use; (2) for purposes of advertising, and (3) a direct connection between the use and the commercial purpose. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998).

Here, Van Halen alleges that Bennett violated section 3344 by knowingly using "[] Van Halen's name, voice, photograph and likeness for [Bennett's] commercial advantages . . . without [] Van Halen's permission or consent." (Compl. ¶ 45.) Specifically, Van Halen alleges that Bennett threatened to release film footage of Van Halen, and that he was entertaining offers for purchase of his copies of the footage. (Compl. ¶ 11.) Moreover, the alleged footage also appeared and was offered for sale at www.directedbyandrewbennett.com/vanhalenabouttimeweb.mov, www.youtube.com/watch?v=Lj0B8df2jTw, and www.etsy.com/people/1trjfvg4. (Compl. ¶ 24.) Hence, Van Halen has been damaged by Bennett's unauthorized use of his name, voice, photograph, and likeness, and therefore, Van Halen's Complaint properly states a meritorious claim for violation of section 3344.

**Misappropriation of Common Law Right of Publicity**

To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Newcombe*, 157 F.3d at 692.

Here, it is alleged that Bennett, without Van Halen's consent, used and continues to use, "Van Halen's name, voice, photograph and likeness to market, advertise, and promote himself and his infringing sales of the 5150 vault, including on his websites, http://5150vault.com and http://thefiftyonefiftyvault.com." (Compl. ¶ 50.) Van Halen further alleges that Bennett has harmed him by (1) interfering with his ability to control how, when and through which channels consumers can view their works; (2) harming his business relationships; (3) diluting the pent-up demand of his fans. (Mot. 13–14.) Therefore, Van Halen properly states a meritorious claim for misappropriation of common law right of publicity. *See Newcombe*, 157 F.3d at 692.

**Breach of Contract**

A breach of contract action in California requires a plaintiff to establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

First, Van Halen assert that Bennett entered into two valid and binding agreements, the Confidentiality Agreement and Settlement Agreement. (Compl. ¶¶ 56, 58; *See* Confidentiality Agreement; *See* Settlement Agreement.) Second, Van Halen alleges that they have performed all conditions, covenants, and promises on under both agreements. (Compl. ¶ 61.) Third, Van Halen alleges that Bennett breached the confidentiality agreement by disclosing Van Halen's confidential information to the public, without Van Halen's consent, in connection with Bennet's sale of the 5150 Vault. (Compl. ¶ 57.) Moreover, Van Halen alleges that Bennett breached the Settlement Agreement by retaining and not providing to Van Halen all the video footage and audio files that in any way deal with, pertain to, or cover Van Halen. (Compl. ¶ 59.) Finally, Van Halen has been harmed by Bennett's breach in an amount no less than $350,000 pursuant to the Agreements. (Compl. ¶¶ 63, 66.) Accepting as true the well-pleaded factual allegations in the Complaint, Van Halen has stated a claim for breach of contract.

Van Halen has stated claims on which it may recover as to its copyright infringement, cybersquatting, use of name and likeness, misappropriation of common law right of publicity, and breach of contract. As such, the second and third *Eitel* factors favor default judgment on those claims.

### *4. Amount at Stake*

The fourth *Eitel* factor balances the amount of money at stake with the "seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at

stake is too large or unreasonable in light of defendant's action." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Here, Van Halen does not seek a default judgment for monetary damages, but instead limit their request to a judgment granting them a permanent injunction. (Mot. 10–11.) Accordingly, this factor favors granting default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1177 (finding that when plaintiff does not seek monetary damages, only injunctive relief, this factor favors granting default judgment.)

### 5. *Possibility of Dispute*

The fifth *Eitel* factor considers the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177. As the allegations in Van Halen's Complaint are presumed true, Bennet's failure to appear in this action results in a finding that "no factual disputes exist that would preclude entry of default judgment." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014). Accordingly, this factor favors granting default judgment.

### 6. *Possibility of Excusable Neglect*

The sixth *Eitel* factor considers the possibility that a defendant's default is the result of excusable neglect. *PepsiCo,* 238 F. Supp. 2d at 1177. Here, Bennett has sent emails to counsel, in which Bennett acknowledged the existence of the lawsuit, and stated that the action "means nothing to me. . . Nothing." (Email.) Despite admittedly knowing about the lawsuit, Bennett failed to file a responsive pleading. Accordingly, this factor favors entry of default judgment. *See also PepsiCo*, 238 F. Supp. at 1177 (finding no possibility of excusable neglect precluding default judgment where defendant, after being served with the complaint, "contacted Plaintiffs' counsel to discuss settlement of the matter," but failed to respond to the complaint.).

### 7. *Policy Favoring Decisions on the Merits*

"[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v.*

*Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, where the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Bennet failed to appear or otherwise respond, a determination on the merits is impossible. Accordingly, this factor does not preclude entry of default judgment.

On balance, the *Eitel* factors support entry of default judgment on Van Halen's causes of action for copyright infringement, cybersquatting, use of name and likeness, misappropriation of common law right of publicity, and breach of contract. As such, the Court **GRANTS** Van Halen's Motion for Default Judgment.

## C. Remedies And Damages

Court has previously granted Van Halen a temporary restraining order (TRO, ECF No. 22) and a preliminary injunction (Prelim. Inj., ECF No. 28) against Bennet. Van Halen now seek a permanent injunction. Under the Copyright Act, the Court "may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). In order for the Court to grant a permanent injunction, plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### *1. Plaintiffs Have Suffered Irreparable Injury*

Van Halen asserts that Bennett's continued threat of release, promotion, and sale of the Subject Material will cause irreparable injury by (1) interfering with Van Halen's ability to control how, when and through which channels consumers can view his works; (2) damaging Van Halen's business relationships; (3) and diluting the pent-up demand of Van Halen fans. (Mot. 13–14.) As discussed above, the Court finds that Bennett has injured Van Halen and will continue to release the Subject Material through

multiple channels, and thereby, denying Van Halen the right to control the use of its copyrighted material and harming its business relationships. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (finding that plaintiff was irreparably harmed because it could not control the use of its copyrighted materials); *Universal City Studios, Inc. v. J.A.R. Sales, Inc.*, No. 82-4892-AAH (BX), 1982 WL 1279, at *8 (C.D. Cal. Oct. 20, 1982) (finding that adverse effects on plaintiffs' business relationships established irreparable harm). Accordingly, Van Halen has established that it has and will continue to suffer irreparable injury.

### *2. Inadequacy of Monetary Damages and Other Remedies At Law*

Van Halen asserts that monetary damages are inadequate because Bennett's infringement undermines Van Halen's hard-earned reputation and goodwill by hijacking his brand and associating it with products not to up Van Halen's standards. (Mot. 15.) The Court agrees. First, "where, as here, injury to goodwill and weakening of a trade name are alleged, it would be impossible to quantify the monetary loss, if any, suffered by the plaintiff. This renders the legal remedy inadequate." *Beachbody, LLC v. Kteam Enterprises, Ltd.*, No. CV1603054ABMRWX, 2017 WL 7806558, at *3 (C.D. Cal. June 19, 2017) (quoting *Dunhill Ltd. v. Dunhill Compact Classics Inc.*, No. 88 5584 WDK (BX), 1988 WL 391507, at *2 (C.D. Cal. Dec. 28, 1988)).

Second, as discussed above, Bennett has refused to participate in this action and has continued to threaten to infringe upon Van Halen's copyright materials. Accordingly, legal remedies are inadequate here because Bennett's "lack of participation in this litigation has given the court no assurance that [Bennett] infringing activity will cease." *Id.* Therefore, the Court finds that monetary damages are in inadequate under these circumstances. *See id.*

### *3. Balance of Hardships Favors Plaintiffs & Permanent Injunction Serves Public Interest*

Next, Van Halen has shown that Bennett has violated the Confidentiality Agreement and Settlement Agreement by releasing Van Halen's copyrighted material

on numerous websites, without Van Halen's consent, and has threatened to continue to release the copyrighted material. (Compl. ¶¶ 35–38.) Van Halen asserts that the injunction would only prohibit Bennett from infringing Van Halen's copyright materials and Bennett would not suffer hardship from the requested infringement. *Beachbody, LLC,* 2017 WL 7806558, at *3 (finding that balance of hardships favored plaintiff because the injunction was limited to activity defendants admitted as unlawful). Therefore, the Court finds "an injunction would serve the public interest because it would both ensure compliance with the law and would avoid consumer confusion." *Id*. (finding that an injunction would serve the public interest when defendant admitted it would continue to distribute copyright infringing videos).

Accordingly, the Court grants Van Halen's request for a permanent injunction against Bennett. Finally, Van Halen does not request litigation costs nor request attorneys' fees, and thus, the Court does not award them. (*See* Mot.)

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Van Halen's Motion for Default Judgment as to Van Halen's causes of action for copyright infringement, cybersquatting, use of name and likeness, misappropriation of common law right of publicity, and breach of contract. (ECF No. 34.) The Court also **GRANTS** Van Halen's request for permanent injunctive relief against Bennett. The Court will issue Judgment.

**IT IS SO ORDERED.**

February 6, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**